UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC. § § § Plaintiff, § § v. § § NOBLE CORPORATION PLC, § NOBLE CORPORATION, NOBLE § DRILLING AMERICAS LLC, NOBLE § DRILLING EXPLORATION § COMPANY, NOBLE DRILLING § HOLDING LLC, NOBLE DRILLING § SERVICES INC., NOBLE DRILLING § (U.S.) LLC, NOBLE DRILLING (U.S.) § INC., AND NOBLE LEASING III § (SWITZERLAND) GMBH § § Defendants. § | CASE NO: 4:17-cv-00123  JURY DEMANDED |

## PLAINTIFF TRANSOCEAN'S FIRST AMENDED COMPLAINT

Transocean Offshore Deepwater Drilling Inc. ("Transocean"), for its complaint of patent infringement against defendants Noble Corporation plc, Noble Corporation, Noble Drilling Americas LLC, Noble Drilling Exploration Company, Noble Drilling Holding LLC, Noble Drilling Services Inc., Noble Drilling (U.S.) LLC, Noble Drilling (U.S.) Inc., and Noble Leasing III (Switzerland) GmbH (collectively "Noble"), alleges as follows:

### THE PARTIES

1. Plaintiff Transocean is a Delaware corporation having a place of business at 4 Greenway Plaza, Houston, Texas 77046.

2. On information and belief, Noble Corporation plc is a public limited liability company incorporated under the laws of England Wales with its principal place of business and registered office at Devonshire House, 1 Mayfair Place, London, W1J 8AJ England.

3. On information and belief, Noble Corporation is a Cayman Islands company with its principal a place of business at 13135 South Dairy Ashford, Suite 800, Sugar Land, TX 77478.

4. On information and belief, Noble Drilling Americas LLC is a Delaware limited liability company with its principal place of business at 13135 South Dairy Ashford, Suite 800, Sugar Land, TX 77478.

5. On information and belief, Noble Drilling Exploration Company is a Delaware corporation with its principal place of business at 13135 South Dairy Ashford, Suite 800, Sugar Land, TX 77478.

6. On information and belief, Noble Drilling Holding LLC is a Delaware limited liability company with its principal place of business at 13135 South Dairy Ashford, Suite 800, Sugar Land, TX 77478.

7. On information and belief, Noble Drilling Services Inc. is a Delaware corporation with its principal place of business at 13135 South Dairy Ashford, Suite 800, Sugar Land, TX 77478.

8. On information and belief, Noble Drilling (U.S.) LLC is a Delaware limited liability company with its principal place of business at 13135 South Dairy Ashford, Suite 800, Sugar Land, TX 77478.

9. On information and belief, Noble Drilling (U.S.) Inc. is a Delaware corporation with its principal place of business at 13135 South Dairy Ashford, Suite 800, Sugar Land, TX 77478.

10. On information and belief, Noble Leasing III (Switzerland) GmbH is a Swiss limited liability company with its principal place of business at Dorfstrasse 19a, 6340 Baar, Switzerland.

## JURISDICTION & VENUE

11. This action arises under the patent statutes of the United States, 35 U.S.C. § 271 *et seq*. Accordingly, the Court has federal question jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1338(a).

12. The court has personal jurisdiction over each Noble defendant.

13. Venue is properly within this District in accordance with 28 U.S.C. § 1391 (b) and (c) and § 1400 (b).

14. This action further arises from breaches of contract that occurred in the course of this case. A substantial part of the events and omissions giving rise to Transocean's claims occurred in the Southern District of Texas. Accordingly, venue is properly within this District in accordance with 28 U.S.C. § 1391(b)(2).

## FACTS AND BACKGROUND

**The Transocean Patents**

15.     On April 11, 2000, United States Patent No. 6,047,781 (the "'781 Patent") was issued for an invention entitled Multi-Activity Offshore Exploration and/or Development Drilling Method and Apparatus. A copy of the '781 Patent is attached as Exhibit A and incorporated herein.

16.     On May 2, 2000, United States Patent No. 6,056,071 (the "'071 Patent") was issued for an invention entitled Multi-Activity Offshore Exploration and/or Development Drilling Method and Apparatus. A copy of the '071 Patent is attached as Exhibit B and incorporated herein.

17.     On May 30, 2000, United States Patent No. 6,068,069 (the "'069 Patent") was issued for an invention entitled Multi-Activity Offshore Exploration and/or Development Drilling Method and Apparatus. A copy of the '069 Patent is attached as Exhibit C and incorporated herein.

18.     On July 11, 2000, United States Patent No. 6,085,851 (the "'851 Patent") was issued for an invention entitled Multi-Activity Offshore Exploration and/or Development Drill Method and Apparatus. A copy of the '851 Patent is attached as Exhibit D and incorporated herein.

19.     The above referenced patents relate to a technology called "dual-activity" that saves time and money in drilling offshore wells. Transocean owns these patents (collectively, the "Transocean patents") by assignment dated March 9, 2004.

**Noble Infringes the Transocean Patents**

*Bob Douglas*

20.     On information and belief, Noble or Noble affiliates had constructed a dual-activity drillship for offshore drilling operations referred to as the *Bob Douglas*. On information and belief, the design of the drillship is covered by the Transocean patents.

21.     On information and belief, Noble or Noble affiliates contracted with Anadarko on or before July 12, 2012 to provide the *Bob Douglas* for an initial term of three (3) years at a daily rate of approximately $635,000 for offshore drilling operations in the U.S. Gulf of Mexico.

22.     On information and belief, Noble or Noble affiliates began operations under the contract with Anadarko by June 2014 with the *Bob Douglas* in the U.S. Gulf of Mexico.

*Don Taylor*

23.     On information and belief, Noble or Noble affiliates had constructed a dual-activity drillship for offshore drilling operations referred to as the *Don Taylor*.  On information and belief, the design of the drillship is covered by the Transocean patents.

24.     On information and belief, Noble or Noble affiliates contracted with Shell on or before January 2011 to provide the *Don Taylor* for an initial term of sixty six (66) months at a daily rate of approximately $482,000 for offshore drilling operations in the U.S. Gulf of Mexico.

25.     On information and belief, Noble or Noble affiliates began operations under the contract with Shell by August 2013 with the *Don Taylor* in the U.S. Gulf of Mexico.

*Globetrotter I*

26. On information and belief, Noble or Noble affiliates had constructed a dual-activity drillship for offshore drilling operations referred to as the *Globetrotter I*. On information and belief, the design of the drillship is covered by the Transocean patents.

27. On information and belief, Noble or Noble affiliates contracted with Shell on or before June 2010 to provide the *Globetrotter I* for an initial term of 10 years at a daily rate of approximately $275,000 for offshore drilling operations in the U.S. Gulf of Mexico.

28. On information and belief, Noble or Noble affiliates began operations under the contract with Shell by September 2012 with the *Globetrotter I* in the U.S. Gulf of Mexico.

*Sam Croft*

29. On information and belief, Noble or Noble affiliates had constructed a dual-activity drillship for offshore drilling operations referred to as the *Sam Croft*.

30. On information and belief, the design of the drillship is covered by the Transocean patents.

31. On information and belief, Noble or Noble affiliates contracted with Plains Exploration & Production Company or its designee by July 2014 to provide the *Sam Croft* for an initial term of at least twenty one (21) months at a daily rate of approximately $643,000 for offshore drilling operations in the U.S. Gulf of Mexico.

32. On information and belief, Noble or Noble affiliates began operations under the contract with Plains Exploration & Production Company or its designee in July 2014 with the *Sam Croft* in the U.S. Gulf of Mexico.

*Tom Madden*

33. On information and belief, Noble or Noble affiliates had constructed a dual-activity drillship for offshore drilling operations referred to as the *Tom Madden*. On information and belief, the design of the drillship is covered by the Transocean patents.

34. On information and belief, Noble or Noble affiliates contracted with Plains Exploration & Production Company or its designee on or before November 2014 to provide the *Tom Madden* for an initial term of at least seventeen (17) months at a daily rate of approximately $637,000 for offshore drilling operations in the U.S. Gulf of Mexico.

35. On information and belief, Noble or Noble affiliates began operations under the contract with Plains Exploration & Production Company or its designee in November 2014 with the *Tom Madden* in the U.S. Gulf of Mexico.

**Previous Infringement, Settlement, and Breach of the Settlement Agreement**

36. The events in this case are not Noble's first infringement of the Transocean patents.

37. On or about December 2004, Noble negotiated and contracted with Shell Exploration & Production Company ("Shell") to provide a dual activity semisubmersible drilling unit called the Noble *Clyde Boudreaux* for dual activity drilling operation in the US territorial waters of the Gulf of Mexico.

38. Accordingly, in 2007, Transocean sued Noble for Patent infringement in the Southern District of Texas in Case No. H-07-0618. Noble promptly agreed to settle pursuant to the terms of that certain "Settlement and License Agreement" dated as of July 23, 2007 (the "Settlement") and signed by Noble Drilling Services, Inc., and Noble

7

Corporation. Noble agreed to pay an up-front license fee of $4,000,000, and, in addition, to a royalty equal to 8 percent.

39. Noble also agreed, prospectively, to the following limitation with respect to the Transocean Patents:

> 4.3 Noble Licensee covenants that it will not participate as a party or financially support a third party in any administrative or court proceeding or effort in the world to invalidate, oppose, nullify, reexamine, reissue or **otherwise challenge the validity, enforceability, or scope of any claim of the Licensed Patents**. Breach of this section 4.3 shall be considered a material breach which may not be cured under section 5.2. If Noble Licensee breaches this section 4.3, then Noble must pay Transocean an additional eleven million dollars ($11,000,000) plus interest accumulating since the Effective Date of this Agreement.
>
> 4.4 Noble Licensee further covenants that its officers and legal in-house counsel will not cooperate with, or knowingly allow an employee or direct an employee or agent of a Noble Licensee to cooperate with, another entity in any proceeding or effort to invalidate, oppose, nullify, reexamine, reissue or otherwise challenge the validity, enforceability, or scope of any claim of the Licensed Patents. Breach of this section 4.4 may be considered a material breach, and such a material breach may not be subject to the cure provisions of section 5.2. Whether a breach of this provision is material shall depend upon the amount of cooperation provided to the entity and the efforts taken by the officers and in-house counsel of Noble Licensee to present any further cooperation.

Settlement Agreement at 4 (emphasis added).

40. Noble's promise never to challenge the "scope of any claim" of the Transocean Patents was material. At the time of the Noble settlement, Transocean had arduously litigated to a jury verdict and final judgment its patent infringement case against GlobalSantaFe, and the court had provided a specific configuration of GlobalSantaFe's

8

drillships that would prevent infringement of Transocean's patents. In reaching the Settlement with Noble, Transocean and Noble also agreed on a specific configuration for the *Clyde Boudreaux* that would prevent infringement if Noble wished to terminate the license and discontinue paying the 8 percent royalty to Transocean. Transocean hoped to ensure by the Settlement that it would not find itself litigating with Noble in the future over additional infringing drillships.

41. The doctrines that defendants commonly use to challenge the "scope" of patent claims prominently include prosecution history disclaimer and prosecution history estoppel. *See, e.g.*, *Trading Techs. Int'l, Inc. v. Open E Cry*, 728 F.3d 1309, 1322 (Fed. Cir. 2013) ("Though distinct, both [prosecution disclaimer and prosecution history estoppel] serve to constrain the enforceable scope of patent claims commensurate with any subject matter surrendered during prosecution to obtain the patent . . . ."); *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1341 (Fed. Cir. 2012) ("When a patentee makes a 'clear and unmistakable disavowal of scope during prosecution,' a claim's scope may be narrowed under the doctrine of prosecution disclaimer."); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1357 (Fed. Cir. 2010) ("Prosecution history estoppel applies at the time of infringement to determine whether the applicant surrendered claim scope *during* prosecution."). By securing Noble's promise never to challenge the scope of the claims in Transocean's Patents, Transocean ensured that Noble would never invoke either doctrine in an effort to avoid a claim of infringement.

42. As a part of its efforts to defend Transocean's claims of infringement in this case, Noble has breached its obligations under the Settlement by, inter alia, challenging

9

(via pleadings, defenses, and otherwise) the scope of the claims included in the Transocean Patents.

43.     Noble has been at least treading on the verge of breach of the Settlement since claim construction. In the introductory paragraph of its Claim Construction Brief (Dkt. 53), Noble argued that "Transocean advances claim constructions that would cover drilling structures that Transocean has disclaimed in the past and that are **clearly outside the scope of the asserted claims**" and that Transocean's proposed constructions should be rejected as a result. (Dkt. 53 at page 7 of 43 (emphasis added)). Noble went on to argue implicitly in its brief that the motion compensation system should be included as required structure in the "means for advancing" claim term. At the hearing, Noble stated unequivocally:

> THE COURT: But in the drill ship context there would be -- you would need -- well, you argue you would need to have a motion compensation system in order for advancing to the seabed to be possible.
>
> NOBLE'S COUNSEL[1]: Yes.

(Dkt. 66 at 67:5–9.)

44.     The Court in the Current Infringement case construed the claims of the Transocean Patents via an order entered on June 19, 2018 (Dkt. 68) (the "*Markman* Order"). In identifying the "structure" associated with the "function" of advancing tubular members to and into the seabed, the Court did not include structure for motion

---

[1] Although the transcript attributes this statement to Mr. McCoy, counsel for Transocean, a reading of the surrounding discussion confirms that the speaker was Mr. McAughan, counsel for Noble.

compensation. Thus, the scope of the claims, as construed by the Court, was not limited to structures that included motion compensation.

45. On October 25, 2018, Noble moved for summary judgment (Dkt. 76) ("Noble's MSJ"), based on a claim that it does not infringe the patents. The central premise of Noble's MSJ is that, notwithstanding the Court's *Markman* Order, Transocean is precluded from asserting that its claims cover structures that lack motion compensation. (Dkt. 76, 22–24.) Based on the cited evidence, Noble invokes "[t]he principles of disclaimer, estoppel, and basic fairness" as reasons why Transocean should be precluded from making such claims. (Dkt. 76 at 24.) In support of this statement, Noble included its footnote 6, which reads as follows:

> [6] *See, e.g., Aylus Networks, Inc. v. Apple Inc.,* 856 F.3d 1353, 1360 (Fed. Cir. 2017) (disparagement of prior art in IPR proceeding served as prosecution disclaimer; claims may not be "argued one way in order to maintain their patentability and in a different way against accused infringers"); *ZitoVault, LLC v. Int'l Bus. Machines Corp.,* No. 3:16-CV-00962, 2018 WL 1964012, at *8 (N.D. Tex. Mar. 23, 2018) (Lynn, D.J.) (patentee's IPR representations tantamount to disavowal of claim scope); *U.S. Ethernet Innovations, LLC v. Texas Instruments Inc.*, No. 6:11-cv-491, 2014 WL 2740383, at *2 (E.D. Tex. June 15, 2014)(Schneider, D.J.) (expert's repeated testimony precluded patentee from advancing contrary infringement position); *Olesky v. Gen. Elec. Co.,* No. 06-cv-1245, 2015 WL 5714208, at *5 (N.D. Ill. Sept. 29, 2015), *aff'd*, No. 2015-1186, 2016 WL 9447164 (Fed. Cir. Decl. 21, 2016) (judicial estoppel prevents patentee from emphasizing required element at invalidity stage then arguing element's irrelevance for infringement); *Gillette Co. v. Energizer Holdings, Inc.,* 405 F.3d 1367, 1374 (Fed. Cir. 2005) (courts may take note of "blatant admissions" before EPO).

(Id.)

46. As these and myriad cases make clear, the sole purpose of prosecution history disclaimer and prosecution history estoppel is to limit the scope of claims. *See, e.g.*, *Open*

11

*E Cry*, 728 F.3d at 1322 ("Prosecution disclaimer . . . affects claim construction and applies where an applicant's actions during prosecution prospectively narrow the literal scope of an otherwise more expansive claim limitation."); *Momentus Golf, Inc. v. Swingrite Golf Corp.*, 187 F. App'x 981, 982 (Fed. Cir. 2006) ("The purpose of the doctrine of prosecution disclaimer is to prevent a patentee from recapturing through claim interpretation meanings he disclaimed during prosecution."); *AccuScan, Inc. v. Xerox Corp.*, 76 F. App'x 290, 292 (Fed. Cir. 2003) ("[P]rosecution disclaimer applies to the determination of literal infringement by excluding from the claim construction any claim scope that has been clearly and unmistakably disavowed during prosecution."); *Duramed Pharm., Inc. v. Paddock Labs., Inc.*, 644 F.3d 1376, 1380 (Fed. Cir. 2011) ("[T]he doctrine of prosecution history estoppel prevents a patent owner from recapturing through the doctrine of equivalents subject matter surrendered to acquire the patent."); *Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997) ("Once prosecution history estoppel limits the scope of a patent, the patentee may not recover for infringement where infringement would require an equivalence between a claim element and an aspect of the accused item that falls within the estoppel."); *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 258 (Fed. Cir. 1985) ("[Prosecution history estoppel] is an equitable tool for determining the permissible scope of patent claims.").

47. Noble has also attempted to limit the scope of Claim 17 of the '069 Patent by arguing "to the seabed and into the body of water to the seabed" means "to the seabed and into the bed of the body of water." (Dkt. 53, 26-28.) Noble's construction contradicts

prior constructions and is literally an attempt to re-write the claim to require that both means be capable of advancing tubular members into the seabed.

48. Noble agreed that any such attempt to limit the scope of claims would be a breach of the Settlement and would obligate it to pay an additional $11 million (together with interest) to Transocean. Despite its multiple breaches of its obligations under the Settlement, Noble has failed and refused to pay the agreed consideration to Transocean.

## Count 1: Patent Infringement

49. Transocean incorporates herein the allegations set forth in Paragraphs 1 through 48 above.

50. Under 35 U.S.C. §§ 271 *et seq.*, the Noble defendants have infringed the Transocean patents by the unauthorized sale, offer for sale, and importation and use of the *Bob Douglas, Don Taylor, Globetrotter I, Sam Croft* and *Tom Madden* or alternatively by actively contributing or inducing a named affiliate or others to sell, offer for sale, import, or use *Bob Douglas, Don Taylor, Globetrotter I, Sam Croft* and *Tom Madden* without authority, literally and/or under the doctrine of equivalents.

51. Transocean has been damaged by the Noble defendants' infringing acts.

52. On information and belief, the Noble defendants were actually aware of the Transocean patents and willfully committed acts of infringement.

## Count 2:  Breach of Contract

53. Transocean incorporates the allegations set forth in Paragraphs 1 through 52 above.

54. Noble has breached its obligations under the Settlement, thereby incurring the obligation to pay $11 million (plus interest at the agreed rate) to Transocean. Transocean has presented its claims in accordance with Chapter 38 of the Texas Civil Practices and Remedies Code and, accordingly, is entitled to an award of reasonable and necessary attorneys' fees.

## JURY DEMAND

55. Transocean demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Transocean prays the Court to:

(a) award damages for Noble's infringement of the Transocean patents under 35 U.S.C. § 284;

(b) find that Noble's infringement has been willful and increase such damages to three times the awarded amount;

(c) award prejudgment and post judgment interest;

(d) find that this case is an exceptional case under 35 U.S.C. § 285 and award attorneys' fees;

(e) award costs;

(f) an award of liquidated damages, prejudgment interest and reasonable and necessary attorneys fees in connection with Noble's breaches of contract; and

(g) grant all other relief to which Transocean is entitled.

Date: February 20, 2019                    Respectfully submitted,

                                        REYNOLDS FRIZZELL LLP

                                      */s/ Chris Reynolds*
                                      Chris Reynolds
                                      State Bar No. 16801900
                                      S.D. Tex. Bar No. 4890
                                      1100 Louisiana Street, Suite 3500
                                      Houston, Texas 77002
                                      Telephone: (713) 485-7200
                                      creynolds@reynoldsfrizzell.com

                                      **ATTORNEY-IN-CHARGE**
                                      **FOR PLAINTIFF TRANSOCEAN**
                                      **OFFSHORE DEEPWATER DRILLING,**
                                      **INC.**

OF COUNSEL:

Jean C. Frizzell
State Bar No. 07484650
S.D. Tex. Bar No. 14529
Lindsey H. Raspino
State Bar No. 24065373
S.D. Tex. Bar No. 1139362
REYNOLDS FRIZZELL LLP
1100 Louisiana Street, Suite 3500
Houston, Texas 77002
Telephone: (713) 485-7200
jfrizzell@reynoldsfrizzell.com
lraspino@reynoldsfrizzell.com

Michael S. McCoy
State Bar No. 24013129
S.D. Tex. Bar No. 24498
AMATONG MCCOY LLC
801 Congress Ave., Ste. 215
Houston, Texas 77002
Telephone: (713) 263-3010
mmccoy@amatongmccoy.com

15

J. Reid Bumgarner
State Bar No. 24053118
S.D. Tex. Bar No. 631284
PORT & BUMGARNER LLP
6750 West Loop South, Suite 748
Houston, Texas 77401
Telephone: (713) 678-0673
rbumgarner@portbumgarner.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of **PLAINTIFF TRANSOCEAN'S FIRST AMENDED COMPLAINT** via the Court's CM/ECF system on February 20, 2019.

                                    */s/ Chris Reynolds*
                                    Chris Reynolds