IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., Plaintiff, | § § § § | |
| v. | § | CIVIL ACTION NO. 4-17-0123 |
| NOBLE CORPORATION PLC, *et al.*, Defendants. | § § § § | |

# **MEMORANDUM AND ORDER**

This patent case is before the Court on the Motion to Dismiss Breach of Contract Claim ("Motion") [Doc. # 103] filed by Defendant Noble Corporation PLC and related corporate Defendants[1] (collectively, "Noble"). Plaintiff Transocean Offshore Deepwater Drilling Inc. ("Transocean") filed a Response [Doc. # 108], and Noble filed a Reply [Doc. # 109]. Having reviewed the record and applied binding and persuasive legal authorities, the Court **denies** the Motion.

## I.   **BACKGROUND**

Transocean is the owner of United States Patents No. 6,047,781 ("the '781 Patent"), No. 6,056,071 ("the '071 Patent"), No. 6,068,069 ("the '069 Patent"), and No. 6,058,851 ("the '851 Patent") (the "Transocean Patents"). In 2007, Transocean

---

[1]   These entities are Noble Corporation, Noble Drilling Americas LLC, Noble Drilling Exploration Company, Noble Drilling Holding LLC, Noble Drilling Services Inc., Noble Drilling (U.S.) LLC, and Noble Drilling (U.S.) Inc.

filed a patent infringement lawsuit, Civil Action No. 4:07cv0618 ("the 2007 Lawsuit"), against Noble. In the 2007 Lawsuit, Transocean alleged that Noble's semisubmersible drilling unit, the *Clyde Boudreaux*, infringed the Transocean Patents. Shortly after the 2007 Lawsuit was filed, Noble conceded that the *Clyde Boudreaux* infringed specific claims of two of the Transocean Patents.

On July 23, 2007, Transocean and Noble entered into a settlement agreement that included a licensing agreement and provided for entry of an agreed judgment against Noble in the 2007 Lawsuit. *See* Settlement and License Agreement ("2007 Settlement Agreement"), Exh. 1 to Response. On July 31, 2007, this Court entered Final Judgment in the 2007 Lawsuit as contemplated and required by the 2007 Settlement Agreement. The Final Judgment in the 2007 Lawsuit provided that the Court "adjudges, orders, and decrees" that Noble's *Clyde Boudreaux* "infringes at least claim 11 of the '781 patent and claim 17 of the '069 patent." *See* Final Judgment, Exh. 2 to Response, ¶ 3. The Final Judgment provided further that it would "have claim and issue preclusion on all future litigation between the parties and those in privity with them." *Id.*, ¶ 8.

Significantly, the 2007 Settlement Agreement included a "No-Challenge Provision." This provision states:

> Noble Licensee covenants that it will not participate as a party or financially support a third party in any administrative or court

> proceeding or effort in the world to invalidate, oppose, nullify, reexamine, reissue or *otherwise challenge the* validity, enforceability, or *scope of any claim of the Licensed Patents*.

2007 Settlement Agreement, ¶ 4.3 (emphasis added). The No-Challenge Provision provides that any breach would be "considered a material breach which may not be cured . . .." *Id.*

In January 2017, Transocean filed the current lawsuit, alleging that Noble owns and leases various drillships for offshore oil drilling operations that infringe the Transocean Patents. The current lawsuit relates to Noble's drillship known as the *Globetrotter* and four other drillships built by Hyundai Heavy Industries. The patent infringement allegations in the current lawsuit do not involve the *Clyde Boudreaux*.

Following the claim construction proceedings in the current lawsuit, and the briefing on Noble's Motion for Summary Judgment of Non-Infringement, Transocean sought and obtained leave to file an amended complaint. In the First Amended Complaint [Doc. # 94], Transocean alleges that Noble breached the No-Challenge Provision of the 2007 Settlement Agreement in the current lawsuit. Specifically, Transocean alleges that Noble improperly argued in this case that the scope of certain claims of the Transocean Patents is more limited than the scope as construed by this and other courts. Noble filed a Motion to Dismiss, which has been fully briefed and is now ripe for decision.

## II. STANDARD FOR MOTION TO DISMISS

Issues regarding the breach of a settlement agreement are not "unique to patent law, even if arising in the context of a patent infringement suit." *See Panduit Corp. v. HellermannTyton Corp.*, 451 F.3d 819, 825 (Fed. Cir. 2006) (citing *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed. Cir. 1999)). Therefore, the Fifth Circuit legal standard for motions to dismiss applies to the pending Motion. *See Panduit Corp.*, 451 F.3d at 825.

In the Fifth Circuit, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Rule 8 "generally requires only a plausible 'short and plain' statement of the plaintiff's claim,

not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

### III.   ANALYSIS

As noted above, a claim asserting breach of a settlement agreement is not "unique to patent law, even if arising in the context of a patent infringement suit." *See Panduit Corp.*, 451 F.3d at 825. Generally, and unless the settlement agreement provides otherwise, the construction and enforcement of settlement agreements entered into in Texas are governed by Texas contract law. *See Eastern Energy, Inc. v. Unico Oil & Gas, Inc.*, 861 F.2d 1379, 1380 (5th Cir. 1988); *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987). In this case, the 2007 Settlement Agreement provides that it "shall be governed by and construed in accordance with the federal laws of the United States and the laws of the State of Texas . . .." *See* 2007 Settlement Agreement, ¶ 11.1. Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499–500 (5th Cir. 2018) (citing *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

It is uncontested Transocean has alleged the existence of a valid contract – the 2007 Settlement Agreement. No-challenge clauses in patent litigation settlement agreements are generally valid and enforceable. *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1369-70 (Fed. Cir. 2001). This promotes an important public policy recognized by the Federal Circuit:

> Settlement agreements must be enforced if they are to remain effective as a means for resolving legal disagreements. Upholding the terms of settlement agreements encourages patent owners to agree to settlements and promotes judicial economy.

*Id*. at 1370. Therefore, no-challenge provisions in a settlement agreement are enforceable where the language is clear and unambiguous. *See Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1362 (Fed. Cir. 2010); *see also Flex-Foot*, 238 F.3d at 1370.

It is also uncontested that Transocean alleges that it performed its obligations under the contract. With reference to the damages element of the breach of contract claim, Transocean quotes the No-Challenge Provision of the 2007 Settlement Agreement, which states that a breach of that provision will be material and will result in an obligation for Noble to pay damages to Transocean. *See* First Amended Complaint [Doc. # 94], ¶ 39 (quoting 2007 Settlement Agreement, ¶ 4.3). Therefore, the dispositive issue on the pending Motion to Dismiss is whether Transocean has

alleged sufficient facts to state a plausible claim that Noble breached the No-Challenge Provision of the 2007 Settlement Agreement.

Noble argues that the No-Challenge Provision of the 2007 Settlement Agreement is restricted to a "direct challenge" to the limited scope established by the parties' agreement that "the configuration of the *Clyde Boudreaux* fell within the scope of certain infringed claims." *See* Motion, pp. 3-4. Noble argues that "a 'challenge to the scope' would necessarily mean advancing a construction directly inconsistent with the *Clyde Boudreaux*'s acknowledged infringement of certain claims." *See id.* at 8. Absent allegations of this direct challenge to the scope of the claims admittedly infringed by the *Clyde Boudreaux*, Noble argues the breach of contract claim must be dismissed.[2]

Transocean bases its breach of contract claim on paragraph 4.3 of the 2007 Settlement Agreement, not on the agreed Final Judgment in the 2007 Lawsuit. The No-Challenge Provision in the 2007 Settlement Agreement is not limited to the scope of the claims in the 2007 Lawsuit that Noble admitted infringing. Instead, the clear and unambiguous language of the No-Challenge Provision precludes a challenge to

---

[2] The Final Judgment in the 2007 Lawsuit did not limit the scope of the Transocean Patents to the claims Noble admittedly infringed. Instead, in the Final Judgment, the Court adjudged that Noble infringed "***at least*** claim 11 of the '781 patent and claim 17 of the '069 patent." *See* Final Judgment in 2007 Lawsuit [Doc. # 21 in Civil Action No. H-07-0618] (emphasis added).

the "scope *of any claim* of the Licensed Patents." *See* 2007 Settlement Agreement, ¶ 4.3 (emphasis added). "Any claim" is unambiguous, and there is nothing in the 2007 Settlement Agreement that suggests the term is limited to the two claims identified in the Final Judgment in the 2007 Lawsuit. If the parties had intended to limit the No-Challenge Provision, they could easily have stated that Noble covenanted that it would not challenge the scope of the specific claims Noble admitted infringing. They did not do so.

Additionally, the limited construction urged by Noble would render the No-Challenge Provision superfluous because of the *res judicata* effect of the agreed Final Judgment entered in the 2007 Lawsuit. *See Flex-Foot*, 238 F.3d at 1369 (citing *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 476 (Fed. Cir. 1991)). Based on the clear and unambiguous language in the 2007 Settlement Agreement, Noble covenanted not to challenge "any claim" of the Transocean Patents.

Noble contends also that arguing for a construction of a disputed claim term cannot constitute a "challenge" for purposes of the 2007 Settlement Agreement's No-Challenge Provision. Whether or not the argument is legally and factually correct, it is inapplicable to the allegations in Transocean's First Amended Complaint. Although Transocean alleges that Noble's conduct during claim construction was "treading on the verge of breach of the Settlement," *see id.*, ¶ 43, Transocean does *not* allege in the

First Amended Complaint that Noble breached the No-Challenge Provision by arguing for its preferred construction of *previously-unconstrued* claim terms. Transocean's breach of contract claim is based, instead, solely on allegations that Noble challenged the scope of claims in the Transocean Patents that had already been defined by claim construction in this or other proceedings. *See id.*, ¶¶ 44-45; ¶ 47.

Specifically, Transocean alleges that the Court's construction of the "means for advancing" claim terms in the Transocean Patents did not include structure for motion compensation. *See id.*, ¶ 44 (citing *Markman* Order [Doc. # 68]). Transocean alleges that the Court's claim construction ruling in this case established the scope of the "means for advancing" claims in its patents. *See id.* Noble appears to agree, noting in the Motion to Dismiss that "the court establishes the scope of asserted claims through the claim construction process." *See* Motion, p. 6. Transocean alleges that after the scope of the "means for advancing" claims had been defined by the Court's claim construction ruling, Noble challenged the scope of the claims by arguing in its summary judgment motion and briefing that Transocean was precluded (primarily by the doctrines of estoppel and disclaimer) from asserting that the scope of the "means for advancing" claims in its patents covered structures that lack motion compensation. *See id.*, ¶ 45. These factual allegations regarding Noble's summary judgment

arguments, together with the allegations relating to the other three elements of a breach of contract claim, are sufficient to state a breach of contract claim.

In the First Amended Complaint, Transocean alleges also that Noble breached the No-Challenge Provision by challenging and attempting to limit the scope of Claim 17 of the '069 Patent by arguing that "to the seabed and into the body of water to the seabed" has a more limited scope that previously construed. *See id.*, ¶ 47. As discussed above regarding the "means for advancing" claims, allegations that Noble challenged the scope of claims in the Transocean Patents by seeking a claim construction that contradicts the claim construction previously issued in a lawsuit or IPR proceeding adequately state a breach of contract claim.

In summary, Transocean alleges that the 2007 Settlement Agreement precludes Noble from challenging the scope of any claim of the Transocean Patents. Transocean alleges that Noble in this case challenged the scope of claims in the Transocean Patents that had previously been construed. Transocean alleges that Noble's conduct challenging the scope of previously-construed claims breached the No-Challenge Provision of the 2007 Settlement Agreement. These allegations satisfy the pleading requirements for the breach of contract claim and preclude dismissal of that claim.[3]

---

[3] The sole issue in a motion to dismiss is whether the plaintiff has adequately alleged a claim for relief. The Court's denial of Noble's Motion addresses only the adequacy of the allegations in the First Amended Complaint. It should not be interpreted as a
(continued...)

## IV. CONCLUSION AND ORDER

Transocean has adequately alleged a factual basis for its breach of contract claim based on Noble's alleged breach of the 2007 Settlement Agreement's No-Challenge Provision. As a result, it is hereby

**ORDERED** that Defendants' Motion to Dismiss [Doc. # 103] is **DENIED**.

SIGNED at Houston, Texas, this **15th** day of **May, 2019**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

---

3   (...continued)
    statement regarding whether Transocean will ultimately prevail on the breach of contract claim.